UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re                                                                                    Chapter 7

Rafael D. Adams,                                                           Case No. 13-45239-CEC

                              Debtor.
----------------------------------------------------------------X
Rafael D. Adams,                                                           Adv. Pro. No. 13-01486-CEC

                              Plaintiff,

              v.
The Estate of Maggie Jordan, Midas Land Corp.,
Robert Mickles, John Doe 1-50, Jane Doe 1-50,
166 Moses LLC.,

                              Defendants,
----------------------------------------------------------------X

## DECISION

Appearances:

Brain McCaffrey  
88-18 Sutphin Blvd., 1st Floor  
Jamaica, New York 11435  
*Counsel for Rafael D. Adams*

Steven Alexander Biolsi  
42 Broadway, 12th Floor  
New York, New York 10004  
*Counsel for Midas Land Corp and 166 Moses LLC*

CARLA E. CRAIG  
Chief United States Bankruptcy Judge

In this adversary proceeding, the debtor, Rafael D. Adams (the "Debtor") seeks an order, pursuant to Articles 5 and 15 of the New York Real Property Actions and Proceedings Law ("NYRPAPL"), determining that he has acquired title the property located at 115-30 166th Street, Jamaica, New York 11434 (the "Property") through adverse possession, and extinguishing the claims of ownership of defendants Midas Land Corp. ("Midas") and 166 Moses LLC.  Defendants seek a determination that the Debtor has failed to establish a claim of adverse possession, and that 166 Moses LLC is the true title holder of the Property.

## JURISDICTION

This Court has jurisdiction over this non-core proceeding under 28 U.S.C. §1334(b) and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This Court may enter a final order in this proceeding pursuant to 28 U.S.C. §157(c)(2) because the parties have consented.  (Tr. of October 27, 2015 Trial 12:4-11, ECF 53 ("Trial Tr.").) [1]

## BACKGROUND

The Debtor currently resides at the Property, and has resided at the Property since November, 1983.  (Joint Pre-Trial Mem., Statement of Undisputed Facts, 3, ECF 49.)  On July 22, 1948, title to the Property was conveyed by Arthur Auspaker to Arthur and Maggie Jordan as husband and wife.  (Id.)  Arthur Jordan predeceased Maggie Jordan, and Maggie Jordan died in January, 1984.  (Id.)  There have been no occupants or possessors of the Property since Maggie Jordan's death, other than the Debtor, and the Debtor's two wives, who resided with the Debtor at the Property during their marriages.  (Joint Pre-Trial Mem., Statement of Undisputed Facts, 3, ECF 49; Trial Tr, 20:9-10.)  On August 4, 2011, title to the Property was conveyed by Robert

---

[1] Citations to "ECF" are to documents filed on the court's docket, identified by docket number.

Mickles, as Maggie Jordan's last surviving heir at law, to Midas. (Joint Pre-Trial Mem., Statement of Undisputed Facts, 3, ECF 49.) On March 24, 2014, Midas conveyed title to the Property to 166 Moses LLC. (Id.)

The Debtor moved into the Property in 1983 at Maggie Jordan's request, to help take care of the house. (Trial Tr. 24:14-21.) Maggie Jordan died four or five months after the Debtor moved into the Property. (Trial Tr. 27:9-12.) The Debtor testified that after Maggie Jordan died, her nephew, Allen Mickles, asked him "to take care of the house." (Trial Tr. 86:14-21.) The Debtor testified that Allen Mickles told him that he did not need the house, and he "said that I could have it." (Trial Tr. 86:22-25.)

The Debtor testified that about two months after Maggie Jordan's death, two men with a gun appeared at the front door and told him to leave the Property. (Trial Tr. 31:1-10.) Following this episode, the Debtor called Allen Mickles, who informed the Debtor that these men were "Louis Phillips' people" and that the Debtor should "pay them no attention." (Trial Tr. 87:2-5.)

The Debtor testified that later in 1984, following this incident, Allen Mickles told the Debtor he had to leave the Property. (Trial Tr. 88:4-12.) Allen Mickles explained to the Debtor that Maggie Jordan's heirs were involved in a dispute over the ownership of the Property, and that the Debtor must move: "Mr. Mickles told me that they were in court over the house and that I would have to leave." (Trial Tr. 33:17-24.) Before he moved to the Property, the Debtor resided at an apartment in Flushing. (Trial Tr. 25:11-20.) The Debtor maintained his apartment in Flushing in 1984, while residing at the Property. (Trial Tr. 25:19-20.) The Debtor testified that he kept his Flushing apartment during this time because "the end of September [1984] -- sometime around that time, I was told I had to leave. I would have to move." (Trial Tr. 71:9-12.)

The dispute over ownership of the Property among Maggie Jordan's heirs resulted in a Surrogate's Court proceeding in 1984. (Joint Stipulated Exhibits, Exhibit E, "Tr. of the 1984 Surrogate's Court Proceeding", at p. 2.) Following the proceeding, the Surrogate's Court granted joint temporary letters of administration to Allen Mickles and Louis Phillips, for the purpose of administering the estate. (Id. at 3.)

Although the Debtor was told by Allen Mickles he must leave the Property, the Debtor remained at the Property, and continues to live there. The Debtor has maintained and improved the Property. The Debtor's improvements to the Property include rewiring the house, renovating a bathroom and the kitchen, and replacing the roof. (Trial Tr. 35:6-8.) The Debtor has also made visible external changes to the Property, such as cutting down trees in the yard, building a fence on the Property, and mowing the lawn. (Trial Tr. 35:8-19.) The Debtor also testified that he paid the taxes on the Property (Trial Tr. 35:17-20.)

## DISCUSSION

In New York,

> [a] party seeking to obtain title by adverse possession must prove by clear and convincing evidence the following common-law requirements of adverse possession: that (1) the possession was hostile and under claim of right; (2) it was actual; (3) it was open and notorious; (4) it was exclusive; and (5) it was continuous for the statutory period of 10 years.

Skyview Motel, LLC v. Wald, 919 N.Y.S.2d 191, 192 (N.Y. App. Div. 2d Dep't 2011). Additionally, under the law in effect prior to 2008, where adverse possession is not founded on a written instrument, the adverse possessor must also prove that the property was "'usually cultivated or improved' or 'protected by a substantial inclosure.'" Birch Tree Partners, LLC v. Windsor Digital Studio, LLC, 19 N.Y.S.3d 298, 300 (N.Y. App. Div. 3d Dep't 2015) (quoting

Skyview Motel, LLC v. Wald, 919 N.Y.S.2d at 192.)[2] "Reduced to its essentials, this means nothing more than that there must be possession in fact of a type that would give the owner a cause of action in ejectment against the occupier throughout the prescriptive period." Brand v. Price, 324 N.E.2d 314,316 (N.Y. 1974).[3]

"Where all the elements of adverse possession are established a presumption of hostility arises and the burden shifts to the record owner to produce evidence rebutting the presumption." Estate of Becker v. Murtagh, 968 N.E.2d 433, 437-438 (N.Y. 2012). However, when entry onto the land was by permission of the record title holder, adverse possession will not commence until the permission or authority has been revoked, and the possessor thereafter has assumed the attitude of hostility to the record owner. Bratone v. Conforti-Brown, 913 N.Y.S.2d 762, 764 (N.Y. App. Div. 2d Dep't 2010). "A party claiming title by adverse possession 'is not required to show enmity or specific acts of hostility in order to establish the element of hostility.'" Estate of Becker v. Murtagh, 968 N.E.2d 433, 437 (N.Y. 2012) (quoting Greenberg v. Sutter, 684 N.Y.S.2d 571, 572 (N.Y. App. Div. 2d Dep't 1999).

Adverse possession must be open and notorious "so that the real owner may, by the unequivocal acts of the disseisor or adverse claimant, have notice of the hostile claim and be thereby called upon to assert his legal title." 2 N.Y. Jur. 2d Adverse Possession § 46. To demonstrate that possession is "open and notorious," the adverse possessor must occupy the

---

[2] NYRPAPL § 522 was amended in 2008, to remove the language requiring an adverse possessor to prove that the property was cultivated or improved, and replacing that language with the requirement that "there have been acts sufficiently open to put a reasonably diligent owner on notice." However, on the facts presented, because title would have vested in the Debtor, if at all, prior to the effective date of the amendment, the pre-2008 version of the NYRPAPL § 522 applies.

[3] "Ejectment actions are available to anyone claiming a superior right to possession." Kosa v. Legg, 816 N.Y.S. 2d 840, 849 (N.Y. Sup. Ct. 2006).

property in a way that would give notice to the true owner. Acts such as building a shed, constructing a wall, planting grass and mowing the lawn have been found to demonstrate open and notorious possession. Hammond v. Baker, 916 N.Y.S.2d 702, 703 (N.Y. App. Div. 4th Dep't 2011) (internal citations omitted). Circumstances that would allow "a casual inspection by the record owner" to reveal the adverse possessor's occupation and use are enough to demonstrate open and notorious use. Hammond v. Baker, 916 N.Y.S.2d at 703 (citing West v. Tilley, 306 N.Y.S.2d 591, 593 (N.Y. App. Div. 4th Dep't 1970)).

## ANALYSIS

The Debtor has clearly and convincingly demonstrated that his possession of the Property was actual and continuous. The Debtor has lived at the Property since 1983. (Trial Tr. 24:9-13.) While the Debtor maintained a separate apartment for several years after moving into the Property, he has had no alternative residence since 1986. (Trial Tr. 25:19-20.) The Debtor's possession was exclusive during the statutory period. (Joint Pre-Trial Mem., Statement of Undisputed Facts, 3, ECF 49.)

The Debtor's possession of the Property was open and notorious throughout the statutory period. The Debtor has testified that he has mowed the lawn and made cosmetic improvements to the Property. (Trial Tr. 79:4-15.) The Debtor also testified and produced evidence showing that he made other externally visible improvements to the Property, including removing trees and building a fence. (Trial Tr. 35:8-16.) A casual inspection by the record owner would clearly have alerted the owner to the presence of the Debtor on the Property. This evidence, together with the evidence of the Debtor's interior renovations and roof replacement, also satisfies the requirement of former NY RPAPL § 522 that Debtor demonstrate that the Property was "usually cultivated or improved" or "protected by a substantial inclosure."

"If the occupation begins with the recognition of the real owner's estate it is presumed to be subservient and that the one making the entry intends to hold honestly and not tortiously." Hinkley v. State, 137 N.E. 599, 601-602 (N.Y. 1922). The Debtor received permission to live at the Property from the record owner, Maggie Jordan, in 1983. (Trial Tr. 24:14-21.) Because the Debtor entered the Property with the permission of the record owner, adverse possession would not commence until such permission had been revoked and the Debtor had assumed the attitude of hostility to the record owner. Bratone v. Conforti-Brown, 913 N.Y.S.2d 762, 764 (N.Y. App. Div. 2d Dep't 2010). The Debtor's license to inhabit the Property was revoked when Maggie Jordan died in January, 1984. Clark v. Strong, 93 N.Y.S. 514, 515 (N.Y. App. Div. 3d Dep't 1905); (Joint Pre-Trial Mem. Statement of Undisputed Facts, 3, ECF 49.)

Allen Mickles was one of three potential distributees of Maggie Jordan's intestate estate. (Joint Stipulated Exhibits, Exhibit E, "Tr. of the 1984 Surrogates Court Proceeding", 2.) Title to real property which is not disposed of by a will vests immediately in all distributees as tenants in common. In re Fry's Estate, 218 N.Y.S. 2d 755, 757 (Sur. Ct. 1961). In this case, title to the Property vested in Allen Mickles, and Louis Phillips, as tenants in common, when Maggie Jordan died. As a tenant in common, Allen Mickles had the authority to lease or sell his interest in the Property. Burack v I. Burack, Inc., 490 N.Y.S. 2d 82, 85 (Yonkers City Ct., 1985). The Debtor received permission to remain at the Property from Allen Mickles following Maggie Jordan's death. (Trial Tr. 86: 22-25.) This permission allowed the Debtor to occupy the Property without depriving the other tenants in common to their right to possession. Burack v I. Burack, Inc., 490 N.Y.S.2d. at 84. Shortly after the Debtor received permission from Allen Mickles to remain at the Property, the Debtor was approached at the Property by men with a gun

who told him to leave. (Trial Tr. 31:1-10.) Following this episode the Debtor called Allen Mickles and received permission, again, to remain at the Property. (Trial Tr. 87:2-5.)

The Debtor's permissive occupancy of the Property ended later in 1984, when a dispute among Maggie Jordan's heirs resulted in a Surrogate's Court proceeding to determine ownership of the Property. (Trial Tr. 33:17-24.) As a result of this development, Allen Mickles revoked the permission he had given the Debtor to reside at the Property.[4] (Trial Tr. 33:17-24.) The Surrogate's Court granted joint letters of administration to Allen Mickles and Louis Phillips. (Joint Stipulated Exhibits, Exhibit E, "Tr. of the 1984 Surrogates Court Proceeding" 2.)[5]

Prior to the issuance of the joint letters of administration, any of the distributees of Maggie Jordan had the authority to evict a holdover at the Property. Kassover v. Gordon Family Associates, Inc., 465 N.Y.S.2d 668, 670 (Civ. Ct., 1983). Louis Philips would have had the authority to remove the Debtor from the Property even before Allen Mickles revoked his permission to the Debtor. When a premises that is incapable of non-exclusive use, such as the Property, is subject to a lease or a license without the consent of all tenants in common, a non-consenting co-tenant has the ability to evict the lessee. Kassover v. Gordon Family Associates, Inc., 465 N.Y.S.2d at 669-670 (internal citations omitted).

Following the granting of joint letters of administration, either Allen Mickles or Louis Phillips had the right to eject the Debtor from the Property. Section 904 of the Surrogate's Court Procedure Act, which was in effect at the time Allen Mickles and Louis Philips received their

---

[4] If the Debtor is deemed to have been granted by Maggie Jordan an implied tenancy at will rather than a license to occupy the Property, the result would be the same. Though a tenancy would not terminate at the death of the landlord, the revocation of permission by Allen Mickles in 1984 would have terminated any such tenancy.

[5] Surrogate's Court Procedure Act § 1001 allows for the appointment of joint administrators in cases where there are eligible distributes equally entitled to administer the estate.

letters of administration, allows a temporary administrator to take possession of real property. 1 Harris N.Y. Estates: Probate Admin. & Litigation § 11:32 (6th ed). Section 905 of the Surrogate's Court Procedure Act provides, in relevant part, that "[a] temporary administrator may maintain any action or proceeding for the purpose of taking into his possession, securing, and preserving all property of a decedent, absentee or internee or for determining the ownership of property." N.Y. Surr. Ct. Proc. Act Law § 905 (McKinney). "Ejectment actions are available to anyone claiming a superior right to possession." Kosa v. Legg, 816 N.Y.S. 2d 840, 849 (N.Y. Sup. Ct. 2006).

Adverse possession will commence after a permissive entry when "such permission or authority has been repudiated and renounced and the possessor thereafter has assumed the attitude of hostility to any right in the real owner." Longshore v. Hoel Pond Landing Inc., 727 N.Y.S.2d 518, 519-520 (N.Y. App. Div. 3d Dep't 2001). This occurred when Allen Mickles told the Debtor in late 1984 that he must leave the Property. The Debtor established hostility to the rights of the true owners by failing to heed this direction to leave the Property. Allen Mickles' express revocation of permission to occupy the Property, followed by the Debtor's refusal to leave and subsequent continuous, exclusive and open and notorious possession of the Property, from that time forward, establishes that the Debtor's presence at the Property was hostile to the rights of all of the distributees of Maggie Jordan's estate.

The defendants argue that the Debtor has failed to adequately prove that his possession was hostile. (Defendant's Post Trial Brief 12, ECF 59.) The defendants compare this case to In re Haynes, 283 B.R. 147 (Bankr. S.D.N.Y. 2002), where the debtor befriended owners of the subject property and assisted with the management of the property. In re Haynes, 283 B.R. 147, 150 (Bankr. S.D.N.Y. 2002). The owners died four or five years after the debtor became a tenant

in their property.  Id.  The debtor then continued to live there, while managing the property for the next 20 years.  Id.  The Court determined that the Debtor had not demonstrated the requisite hostility to prove adverse possession.  The Court found that the Debtor's failure to pay rent and subsequent collection of rent from other tenants did not establish adversity because the debtor was acting in what she believed was a fiduciary role on behalf of the true owners.  Id. at 152.

There are two important distinctions between the facts presented in Haynes and the instant case.  First, in Haynes, the State of New York was the "true owner" at the time title would have vested in the adverse possessor.  "[U]pon the death of Joseph James, the property escheated to the State, and one cannot gain ownership of property by way of adverse possession against the State."  Id. at 153.  Second, it does not appear that in Haynes, permission to occupy the property was ever revoked.  Here, the Debtor has shown that his permission to occupy at the Property was revoked.  (Trial Tr. 33:17-24.)

The defendants claim that the Debtor has presented "not one scintilla of evidence that the true owner revoked the initial permission…" (Defendants' Post Trial Brief, 16, ECF 59.)  This is not an accurate characterization of the evidence presented.  The Debtor provided clear and convincing testimony at trial, showing that his permission to stay at the Property was revoked by Allen Mickles.  (See Trial Tr., at pp. 28, 29, 33, 71, 74, 86, 87, 88.)  This revocation of permission terminated any right that the Debtor had to reside at the Property, and his continued possession thereafter was hostile to the rights of the true owners.

## CONCLUSION

For all of the foregoing reasons, the Debtor's request for a declaratory judgement that he has acquired title to the Property through adverse possession is granted. A separate order will issue.



Dated: Brooklyn, New York
March 10, 2016

_____
Carla E. Craig
United States Bankruptcy Judge